FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

ˌ JUN – 6 2008

Stephan Harris, Clerk
Cheyenne

STEPHEN L. PEVAR
American Civil Liberties Union Foundation
32 Grand Street
Hartford, Connecticut 06106
(860) 293-1559

JENNIFER HORVATH
American Civil Liberties Union of Wyoming
PO Box 20706
1603 Capitol Avenue, Suite 510
Cheyenne, Wyoming 82003
(307) 637-4537

ATTORNEYS FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| JOSEPH MILLER, and HURIE PURDIMAN, JR. | ) ) ) | Civ. No. 08-CV-090B |
| Plaintiffs, | ) ) | PLAINTIFFS' MOTION FOR |
| vs. | ) ) | PRELIMINARY INJUNCTION, |
| MICHAEL MURPHY and, ROBERT LAMPERT, in their official and individual capacities, | ) ) ) ) | AND BRIEF IN SUPPORT |
| Defendants. | ) ) | |

## INTRODUCTION

Plaintiffs Joseph Miller and Hurie Purdiman, Jr., are Muslim prisoners

incarcerated in the Wyoming State Penitentiary ("WSP"). They file this motion in

an effort to immediately halt further violations of rights guaranteed them by the

Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 114 Stat. 804, 42 U.S.C. § 2000cc.

Defendant Michael Murphy is the Warden of WSP, and Defendant Robert Lampert is the Director of the Wyoming Department of Corrections ("WDOC"). These prison officials adopted, and their subordinates at WSP enforce, a policy known as the "twenty-minute" rule. This policy requires segregated prisoners to eat their meals within twenty minutes after delivery by guards. Food not eaten within twenty minutes will be confiscated and discarded.

The "twenty-minute" rule substantially burdens Plaintiffs' religion in violation of RLUIPA on those occasions when meals are delivered during one of Plaintiffs' religious exercises, that is, during their prayers or their religious fasting. On those occasions, Plaintiffs are faced with a "Hobson's choice": either they must violate their religious beliefs by abruptly terminating their religious exercise and choose to eat, or they must follow their conscience and complete their religious exercise, but forfeit their meal. On these occasions, in other words, Plaintiffs must relinquish their food in order to follow their faith.

Plaintiffs asked Warden Murphy in January 2008 to grant them an exemption from the "twenty-minute" rule when meals are delivered during a religious exercise, by allowing them extra time to eat their meals on those occasions. Warden Murphy denied that request, stating that "[f]or years now" the prison has maintained a policy that allows prisoners only "twenty (20) minutes to eat their meals" and no exceptions are allowed. *See* Letter of Warden Michael Murphy dated January 22, 2008 (attached as "Exhibit 1.")

For reasons explained below, Defendants' "twenty-minute" rule violates RLUIPA. Indeed, as the Supreme Court made clear in *Cutter v. Wilkinson*, 544 U.S. 709 (2005), RLUIPA was intended to eradicate *the very type of prison policy challenged here. See Cutter*, 544 U.S. at 716-17 & n.5 (noting that RLUIPA was enacted "[t]o secure redress for inmates who encountered undue barriers to their religious observances," citing as one example of an undue barrier a policy of forcing inmates to choose between completing a religious exercise and eating).

Before proceeding further, the Court should be aware of one additional set of facts. As just noted, Warden Murphy staunchly defended his "twenty-minute" rule as recently as January 22, 2008. As a result, the instant lawsuit was filed on April 3, 2008. After the complaint was filed, however, Plaintiffs learned that Warden Murphy had suddenly abandoned his "twenty-minute" rule ten days earlier, on March 24, 2008, when he issued Warden's Memorandum # 7-2008, a copy of which is attached as "Exhibit 2." This new rule is precisely the type of exemption that Plaintiffs had requested in January.    Rather than require prisoners engaging in a religious exercise to consume their meals within twenty minutes, the new rule permits such persons to retain their meals until the next meal is served (which, of course, will be hours later).    Thus, Warden Murphy repealed the "twenty-minute" rule, replacing it with a very accommodating policy.

The problem is--and the reason why Plaintiffs seek preliminary injunctive relief--many WSP employees continue to enforce the "twenty-minute" rule.  On April 5, 2008, for instance, Correctional Officer Fuller confiscated meals served to Plaintiffs Miller and Purdiman. When Mr. Purdiman grieved the loss of his meal,

Officer Fuller cited the "twenty-minute" rule as the reason.  (A copy of Officer Fuller's response is attached as "Exhibit 3.")   Mr. Purdiman then asked his caseworker, Mr. Markum, if anything could be done to change the "twenty-minute" rule.  Mr. Markum replied on April 7, 2008, stating that he is unable to change the rule. (A copy of Mr. Markum's statement is attached as "Exhibit 4.") On April 24, 2008, a supervisory officer, Corporal Paulsing, enforced the "twenty-minute" rule on a Jewish prisoner, David Jones.  (*See* Declaration of David Jones, attached as "Exhibit 5," at 2.)  As recently as May 8, 2008, an officer enforced the "twenty-minute" rule against Mr. Purdiman. (*See* Declaration of Hurie Purdiman, attached as "Exhibit 6.")

As discussed *infra*, the "twenty-minute" rule violates RLUIPA, and its continued enforcement is causing Plaintiffs to suffer irreparable injury.  Plaintiffs respectfully move this Honorable Court to issue a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining all further enforcement of the "twenty-minute" rule. *See Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) (holding that a prisoner was entitled to a preliminary injunction in a circumstance similar to the one faced here by the Plaintiffs). Frankly, a fitting injunction would be one that merely requires Defendants to implement *their own March 24 policy*, Warden's Memorandum # 7-2008.  In other words, the Court need only order Defendants to do what Warden Murphy has stated that he wants to do, but which his subordinates have yet to implement with any consistency.

## STATEMENT OF UNCONTESTED FACTS

1.  Plaintiffs Joseph Miller and Hurie Purdiman, Jr. are prisoners of WSP. Both men have been followers of the Muslim faith for more than fifteen years. *See* Declarations of Hurie Purdiman, Jr., and Joseph Miller, attached respectively as "Exhibit 6" and "Exhibit 7."   For reasons set forth in their Declarations, Plaintiffs pray five times each day and periodically engage in religious fasts from sunup until sundown.   In addition, they receive special religious ("Halal") meals from WSP due to their religious dietary constraints.

2.  Defendant Michael Murphy is the Warden of WSP.   Defendant Robert Lampert is the Director of WDOC.

3.  Based on Plaintiffs' information and belief, WDOC and WSP receive federal monies.

4.  The events giving rise to this action commenced on December 23, 2007, when Defendants first began to enforce the "twenty-minute" rule against the Plaintiffs.   On that date, Mr. Purdiman was assigned to C-Unit, where meals are served in a common area but are sometimes delivered directly to the prisoners' cells.   Mr. Purdiman was engaged in a religious fast from sunup until sundown in observance of Zul-Hajjah, or The Pilgrimage.   A guard delivered a meal to Plaintiff Purdiman in his cell.   Some minutes later, two other guards came to his cell and told him that he "had better change [his] religion fast" because he only had a few minutes to eat due to a "new rule."   Mr. Purdiman was then ordered to leave his cell while these officers conducted a search.   When Mr.

5

Purdiman was allowed to return, he discovered that his meal had been confiscated. *See* Exhibit 6.

5.  Plaintiff Miller, who was housed in a different unit than Mr. Purdiman on December 23, 2007, was likewise subjected to the "twenty-minute" rule for the first time on that date. Mr. Miller was unable to immediately eat his dinner for religious reasons when it was served. Twenty minutes after its delivery, an officer returned and confiscated his meal, explaining that, according to an email, prisoners with special religious meals were only permitted 20 minutes to eat. Mr. Miller subsequently had other meals confiscated after 20 minutes. *See* Exhibit 7.

6.  On December 31, 2007, a guard delivered a Halal meal to Plaintiff Purdiman at approximately 4:00 p.m. Mr. Purdiman set aside the meal to eat it at the end of his fast at sundown. After 20 minutes, a guard confiscated his meal pursuant to the "twenty-minute" rule. Plaintiff Purdiman submitted an institutional grievance complaining about this confiscation. *See* Exhibit 6. WSP's Grievance Manager, Jason Bohl, responded to this grievance on January 16, 2008, acknowledging the existence of the unwritten "twenty-minute" rule and defending its strict enforcement. (Jason Bohl's Memorandum is attached as "Exhibit 8.")

7.  Plaintiff Miller submitted a grievance to Warden Murphy regarding the "twenty-minute" rule. In a letter dated January 22, 2008, Warden Murphy responded to Plaintiff Miller's complaint, stating that, "[f]or years now, it has been the practice to allow WSP inmates twenty (20) minutes to eat their meals . . ." *See* Exhibit 1. Mr. Miller appealed the Warden's decision to the Deputy Director of WDOC, Steve Lindly. However, in a letter dated January 29, 2008, Mr. Lindly

affirmed the Warden's decision and upheld the strict enforcement of the "twenty minute" rule, stating that the Warden had "advised the staff to enforce the standard of 20 minutes to eat a meal." (Deputy Director Lindly's letter is attached as "Exhibit 10.")

8.    Prisoners of other religious faiths also complained about the enforcement of the "twenty-minute" rule. Attached as "Exhibit 9" is the response that a Jewish prisoner received from WSP's acting chaplain, Sgt. Denise Neu, on January 28, 2008. Sgt. Neu defended the strict enforcement of the rule.

9.    On March 24, 2008, Warden Murphy issued Warden's Memorandum # 7-2008, which repealed the "twenty-minute" rule and allows prisoners with special meals, including religious meals, to keep their meals until the next meal is delivered. *See* Exhibit 2.

10.    On April 1, 2008, Director Lampert responded to Plaintiff Purdiman's grievance regarding the December 31 confiscation of his meal, and Mr. Purdiman received the response on April 7. According to Director Lampert, Warden's Memorandum # 7-2008 resolved the grievance. (Director Lampert's response is attached as "Exhibit 11.")

11.    The "twenty-minute" rule, however, continues to be enforced, and many WSP employees either are unaware of the new rule or have chosen not to implement it. On April 5, 2008, Plaintiff Miller and Plaintiff Purdiman resided together in C-Unit. They received their Halal meal sacks, but the hot portion of the meal contained processed foods violative of their Halal diets, and these items should not have been included in the sacks. They showed the meals to Officer

7

Fuller and requested assistance in obtaining a new meal, but Officer Fuller refused to assist them. They then showed their meals to Sgt. Borah, who agreed to request new meals. While they waited for their religious meals to be delivered, all prisoners were sent to their cells to be counted. Both men left the untainted portion of their meals on a dining table and planned to retrieve it after "count." When "count" was completed, both men discovered that Officer Fuller had discarded their meals. *See* Exhibits 6 and 7. Plaintiff Purdiman sent an Inmate Communication Form (the first step in WSP's grievance process) to Officer Fuller. Officer Fuller replied that the "twenty-minute" rule required him to confiscate Mr. Purdiman's meal. *See* Exhibit 3. Plaintiff Purdiman then sent an Inmate Communication Form to his Caseworker, Mr. Markum, protesting the confiscation of his meal. Mr. Markum--apparently unaware, as was Officer Fuller, that the "twenty-minute" rule had been repealed two weeks earlier--stated that he could not change the "twenty-minute" rule. *See* Exhibit 4.

12.   Prisoner Dan Goodrick first learned about Warden's Memorandum # 7-2008 when he received a copy of it on April 21, 2008, from counsel Stephen Pevar. He immediately showed it to Officer York. Officer York stated that he had never seen the Memorandum before. (Dan Goodrick's Declaration is attached as "Exhibit 12.")

13.   On April 24, 2008, a Jewish prisoner, David Michael Jones, received his religious (Kosher) meal sack at approximately 4:30 p.m. After Mr. Jones took the meal to his cell, Corporal Paulsing told him that he had to confiscate the meal pursuant to the "twenty-minute"rule. When Mr. Jones told Corporal Paulsing

8

about the change in policy due to the March 24 Memorandum, Corporal Paulsing responded that he had not seen any such Memorandum. *See* Exhibit 5.

14.  Mr. Purdiman appealed the April 5 confiscation of his meal to Warden Murphy.  In a response dated May 5, 2008, Warden Murphy acknowledged that "Officer Fuller probably should not have thrown away [Mr. Purdiman's] meal." (Warden Murphy's response is attached as "Exhibit 13.")

15.  On May 8, 2008, Mr. Purdiman was served his Halal meal.  When his housing unit was offered access to exercise a few moments later, he requested permission to store his religious meal in his cell, as Warden's Memorandum # 7-2008 would permit.  Guards, however, denied that request, so Mr. Purdiman left the meal on the dining table.  When he returned from exercise, he discovered that guards had confiscated his meal. *See* Exhibit 6.

## ARGUMENT

### 1.  The Legislative History and Remedial Purpose of RLUIPA

The legislative history of RLUIPA is clear and compelling.  As the Supreme Court recognized in *Cutter*, "RLUIPA is the latest of long-running congressional efforts to accord religious exercise *heightened protection* from government-imposed burdens . . . ." *Id.*, 544 U.S. at 714 (emphasis added).  Ten years before RLUIPA's enactment, the Supreme Court had held in *Employment Div., Dept. of Human Resources of Ore. v. Smith,* 494 U.S. 872, 878-882 (1990), that the First Amendment's Free Exercise Clause does not prohibit enforcement of otherwise valid laws of general application that burden religious conduct. *See Cutter* at 714.  A wide variety of religious exercises were thus subject to

9

government prohibition as a result of "neutral" laws. In *Smith*, for instance, the Court held that a general prohibition on the possession of peyote could be applied to prohibit, without violating the Free Exercise Clause, Native Americans from possessing peyote for sacramental purposes.

The Court recognized in *Smith*, however, that the political branches of the federal and state governments were free to enact legislation that provided protections to religious exercise beyond those imposed by the Constitution. *Id.* at 890. Responding to that invitation, Congress enacted the Religious Freedom Restoration Act of 1993 (RFRA), 107 Stat. 1488, 42 U.S.C. § 2000bb *et seq.* This prophylactic legislation sought to prohibit the state and federal governments from "substantially burden[ing]" a person's exercise of religion unless the government could demonstrate that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *See* § 2000bb-1. RFRA, in short, imposes strict scrutiny when governmental action inhibits religious activity.

Congressional intent, however, was thwarted in part by the Supreme Court's decision in *City of Boerne v. Flores,* 521 U.S. 507 (1997). RFRA had been enacted pursuant to Congress' enforcement powers under section 5 of the Fourteenth Amendment. The Court held in *Boerne v. Flores* that those powers were insufficient to overcome the protections against federal authority afforded to states by the Tenth Amendment. RFRA, in other words, was applicable to the federal government but not to the states.

Congress again responded. After holding three years of hearings, *see Cutter*, 544 U.S. at 716, Congress enacted RLUIPA. This time, rather than invoking authority under the Fourteenth Amendment, Congress narrowed the scope of its prohibitions and invoked its authority under the Spending and Commerce Clauses. *See Cutter,* at 715. Whereas RFRA applies to *all* actions of government, RLUIPA applies to only two: Section 2 of the Act applies to land use regulations, *see* 42 U.S.C. § 2000cc, and Section 3 relates to religious exercises performed by institutionalized persons. *See* § 2000cc-1. Moreover, in order to remain within its constitutional boundaries under the Spending Clause, Congress limited the application of Section 3 to "a program or activity [in an institution] that receives Federal financial assistance." 42 U.S.C. § 2000cc-1(b)(1).[1]

RLUIPA, the Supreme Court held in *Cutter*, is valid legislation. In reaching this conclusion, the Court illuminated RLUIPA's legislative history. In addition to discussing *Employment Division v. Smith* and *Boerne v. Flores*, the Court summarized the testimony elicited during the congressional hearings, during which numerous witnesses informed Congress that religious exercises by prisoners were often impeded or prohibited by unnecessary barriers. Among the examples cited by the Court were refusals to provide Muslim prisoners with Halal food, mistreatment or confiscation of religious items, and--especially relevant here--compelling prisoners to choose between eating meals and participating in religious exercises. *See Cutter*, at 716 n.5.

---

[1] All prisons in the United States, the Court noted in *Cutter*, receive Federal financial assistance. *See Cutter*, 544 U.S. at 716 n.4. Consequently, WSP must comply with RLUIPA, and the Plaintiffs are entitled to its protection.

RLUIPA was intended to protect institutionalized persons "who are unable to freely attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of religion." *Cutter*, at 721. RLUIPA, like RFRA, is designed to assist prisoners obtain information regarding, and to practice, their religion. *See Kikumura v. Hurley*, 242 F.2d 950, 961 (10th Cir. 2001) (citing Cong. Rec. S14,465, daily ed. Oct. 27, 1993, Statement of Orrin Hatch: "We should accommodate efforts to bring religion to prisoners.")

The vehicle employed by Congress to accomplish these remedial purposes under RLUIPA is the "compelling interest test," which imposes a higher level of scrutiny than the "reasonableness" test. *See Cutter*, at 712. In *Employment Division v. Smith*, the Court held that Free Exercise claims must be examined under the "reasonableness" test. Thus, RLUIPA subjects government actions which impact a prisoner's religious exercise to a "stricter standard of review" than under the Free Exercise Clause. *Shakur v. Schriro*, 514 F.3d 878, 888 (9th Cir. 2008). RLUIPA affords confined persons "greater protection of religious exercise than what the Constitution itself affords." *Lovelace v. Lee*, 472 F.3d 174, 186 (4th Cir. 2006).

## 2. The Burden of Proof under RLUIPA

RLUIPA identifies which party has the burden of proof with respect to each element of a RLUIPA claim. Section 3 of the Act provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general

applicability" unless the government demonstrates that the burden is "in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that . . . interest." 42 U.S.C. § 2000cc-1(a). The Act further states that the plaintiff "bear[s] the burden of persuasion on whether the . . . government practice that is challenged by the claim substantially burdens the exercise of religion," after which the government must prove that the challenged regulation "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." *Id.* §§ 2000cc-1(a), 2000cc-2(b).

Thus, there are four essential elements to a RLUIPA claim; the plaintiff bears the burden of proving the first two, and the government the latter two. The plaintiff must demonstrate (1) that the activity in question is a religious exercise, and (2) that this exercise is being substantially burdened by defendant's actions. If the plaintiff carries that burden, the government must show that (1) the regulation in question serves a compelling governmental interest, and (2) that this regulation is the least restrictive means of achieving that interest. *Id.* §§ 2000cc-1(a), 2000cc-2(b). *See Smith v. Allen*, 502 F.3d 1255, 1276 (11th Cir. 2007); *Shakur v. Schiriro*, 514 F.3d at 889.

Significantly, RLUIPA defines "religious exercise" to include "*any* exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A) (emphasis added). *See Cutter*, at 715-16. Consequently, as the Tenth Circuit has recognized, a plaintiff need not prove that the exercise in question is *required* by the plaintiff's religion. *See Kikumura*, 242

13

F.3d at 961 ("Under the definition of 'religious exercise' in 42 U.S.C. § 2000cc-5(7)(A), however, a religious exercise need not be mandatory for it to be protected under" RLUIPA).[2]

In RLUIPA cases, therefore, the plaintiff need not prove that the practice being burdened is central to plaintiff's faith. Rather, the question is whether the exercise in question is religious and whether the government is substantially burdening *that* exercise. *See Cutter*, at 725 n.13 (stating that RLUIPA "bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion.") *See also Kikumura*, 242 F.3d at 961; *Greene v. Solano County Jail*, 513 F.3d 982, 986-87 (9th Cir. 2008); *Van Wyhe v. Reisch*, 536 F. Supp. 1110, 1125 (D.S.D. 2008) (holding that it was unnecessary to determine whether a religiously acceptable diet "is central to the exercise of [plaintiff's] religion" because that inquiry is irrelevant in RLUIPA cases).

### 3. Plaintiffs Miller and Purdiman Are Entitled To Prevail Under RLUIPA

#### (a) Plaintiffs satisfy their burden of proof

Plaintiffs easily satisfy their burden of proof on the first two elements of their RLUIPA claim. That is, (1) the activities in question--prayer and religious fasting--are religious exercises, and (2) forcing Plaintiffs to forfeit their meals in order to engage in those exercises is a substantial burden.

The declarations filed by Plaintiffs Purdiman and Miller establish that the Plaintiffs, like millions of other Muslims the world over, pray five times a day, with

---

[2]The plaintiff in *Kikumura* was a federal prisoner who sought relief under RFRA. The Tenth Circuit noted, however, that RLUIPA was equally as applicable to federal prisoners, and the court employed RLUIPA's definition of "religious exercise." Applying that definition, the court held that pastoral visits, although not required in order for the plaintiff to practice his religion, were nevertheless a "religious exercise" protected by RFRA and RLUIPA.

the timing of their prayers influenced by the rising and setting of the sun. *See* Exhibits 6 and 7. Prayer, of course, is an inherently religious exercise. *See, e.g., Engel v. Vitale*, 370 U.S. 421, 425 (1962); *Lee v. Weisman*, 505 U.S. 577, 587-93 (1992). Plaintiffs' Declarations also establish that on certain occasions (as during the entire month of Ramadan), Plaintiffs engage in religious fasting between sunrise and sunset, joining millions of other Muslims in that exercise. Many religions, including both the Muslim and Jewish religions, expect adherents to fast on particular occasions as an important aspect of their religious duties. Such fasting clearly is a religious exercise. Thus, Plaintiffs satisfy the first RLUIPA element: the exercises at issue are religious.

Plaintiffs also satisfy the second element because the "twenty-minute" rule substantially burdens these religious exercises by depriving Plaintiffs of food. It is as if Defendants enacted a rule stating: "Prisoners who wish to pray will be punished by a loss of food." That is the net effect of Defendants' "twenty-minute" rule.

These types of choices, in which adherents can remain faithful to their religious beliefs only by sacrificing a state benefit, have long been viewed as placing a substantial burden on religious practice. *See, e.g. Sherbert v. Verner*, 374 U.S. 398, 404 (1963) (holding that the government placed a substantial burden on the religious exercise of a Seventh Day Adventist when she was denied unemployment compensation for refusing for religious reasons to work on Saturdays); *Thomas v. Review Board of Indiana Employment Security Div.*, 450 U.S. 707, 717-18 (1981) (holding that the state puts "substantial pressure on an

15

adherent to modify his behavior" when a state benefit can be obtained only if the adherent engages in conduct inconsistent with his faith); *Hobbie v. Unemployment Appeals Comm'n of Florida*, 480 U.S. 136, 141 (1987).

Based on this Supreme Court precedent--and given the broad remedial purposes of RLUIPA--courts in RLUIPA cases have broadly defined "substantial burden." *See Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007) ("Congress intended to create a broad definition of substantial burden.") As the Third Circuit stated last year, summarizing the prevailing case law:

> For the purposes of RLUIPA, a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

*Washington v. Klem*, 497 F.3d at 280. *See also Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (stating that, "for RLUIPA purposes, a substantial burden on religious exercise occurs when a state or local government, through act or omission, puts substantial pressure on an adherent to modify his behavior and to violate his beliefs."); *Warsoldier v. Woodford*, 418 F.3d at 995-96 (same).

Defendants' "twenty-minute" rule places significant pressure on Plaintiffs Miller and Purdiman to abandon their religious beliefs. The rule forces these men to chose between options "that are mutually unacceptable." *See Shakur*, 514 F.3d at 889. On April 5, 2008, when Officer Fuller discarded Plaintiffs' meals after twenty minutes (despite the enactment two weeks earlier of Warden's Memorandum # 7-2008), Fuller punished these men for not eating within the

16

twenty-minute limitation, even though Plaintiffs could not have complied with that rule without violating their religious precepts.

The Ninth Circuit's decision in *Shakur* is instructive.  In that case, prison officials gave a Muslim prisoner the choice between eating food that was religiously acceptable ("Halal") but which caused him gastric distress, and eating the prison's regular food that cured his medical problem but which violated his religious beliefs.  Prison officials refused to offer other types of Halal food that were readily available and medically palatable to Mr. Shakur.  The district court granted summary judgment to prison officials on Mr. Shakur's RLUIPA claim, but the Ninth Circuit reversed.  Prison officials were giving Mr. Shakur a "Hobson's choice" that violated RLUIPA, requiring him to choose between eating and remaining faithful to his religious beliefs.  *Id.*, 514 F.3d at 890.  This is precisely the choice the "twenty-minute" rule requires of Plaintiffs.

In numerous RLUIPA cases, courts have broadly applied the "substantial burden" test, finding various restrictions--including many far less onerous than the one at issue here--to be unacceptable burdens on religious exercise. *See Greene v. Solano County Jail*, 513 F.3d 982, 988 (9th Cir. 2008) (denying a prisoner the right to participate in a group religious service is a "substantial burden" under RLUIPA); *Washington v. Klem*, 497 at 278-81 (limiting prisoners to four religious books in their cells at one time is a "substantial burden"); *Spratt v. R.I. Dept. of Corrs.*, 482 F.3d 33, 38 (1st Cir. 2007) (denying prisoner the opportunity to preach to other prisoners is a "substantial burden"); *Lovelace v. Lee*, 472 F.3d 174, 187-88 (4th Cir. 2006) (denying a Muslim prisoner access to

17

Halal foods merely because prison officials had observed him eating non-Halal foods is a "substantial burden"); *Warsoldier*, 418 F.3d at 996 (forcing a prisoner to remain in his cell until he agreed to have his hair cut in a manner that violated his faith is a "substantial burden"). *See also Kikumura v. Hurley*, 242 F.3d 950, 961 (10th Cir. 2001) (denying a prisoner the opportunity to be visited by a pastor is a "substantial burden" under RFRA).

Defendants' "twenty-minute" rule punishes Plaintiffs for engaging in practices required by their religious precepts.   The "twenty-minute" rule substantially burdens Plaintiffs' religious exercise by forcing Plaintiffs to choose between eating a meal and completing their religious activity.   Accordingly, Plaintiffs have satisfied their burden of proof under RLUIPA, and are entitled to prevail unless the government can satisfy its burdens.   In order to overcome Plaintiffs' *prima facie* case, Defendants must now demonstrate that the continued enforcement of their "twenty-minute" rule "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." *Id.* §§ 2000cc-1. *See Cutter*, at 712.

### (b) Defendants cannot satisfy their burden of proof

Plaintiffs are willing to concede for the purposes of resolving the instant motion for preliminary injunctive relief that Defendants' "twenty-minute" rule satisfies a compelling governmental interest.   The indisputable fact is that Defendants' "twenty-minute" cannot possibly survive the "least restrictive means" test.   After all, Warden's Memorandum # 7-2008, adopted March 24, 2008, repealed the strict and burdensome "twenty-minute" rule and replaced it with a

18

completely accommodating standard that allows a prisoner engaged in a religious exercise to keep his meal until the next meal is served, hours hence. Consequently, *we know for certain* that the continued enforcement of the "twenty-minute" rule is not the least drastic means of accomplishing Defendants' compelling interests (and it probably never was).

Every application of the "twenty-minute" rule after March 24, 2008 on prisoners engaging in a religious exercise--and the record demonstrates that there have been several already--were clear violations of RLUIPA. The very existence of Warden's Memorandum # 7-2008 proves that the far more restrictive "twenty-minute" rule is unnecessarily burdensome and, hence, violative of RLUIPA. *See Shakur*, 514 F.3d at 887 (holding that where defendant prison officials already have a less drastic rule than the one under scrutiny but are refusing to apply it to the plaintiff, a RLUIPA violation seems obvious).

## 4. Plaintiffs Are Entitled To Preliminary Injunctive Relief

Guards should no longer be enforcing the "twenty-minute" rule, and yet some of them are still doing so. Under Tenth Circuit protocol:

> A movant is entitled to a preliminary injunction if he can establish the following: (1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest.

*Kikumura*, 242 F.3d at 955, citing *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1283 (10th Cir. 1996). Clearly, Plaintiffs Miller and Purdiman are entitled to preliminary injunctive relief. First, Plaintiffs have a substantial

likelihood of success on the merits of their case. The existence of Warden's Memorandum # 7-2008 proves that Defendants' "twenty-minute" rule is indefensible under RLUIPA.

Second, Plaintiffs will suffer irreparable injury each time the "twenty-minute" rule is enforced against them because the rule deprives them of food. Each application of the rule burdens Plaintiffs' exercise of religion in violation of RLUIPA, and these violations cannot be adequately compensated monetarily. Thus, Plaintiffs will suffer irreparable injury by the continued enforcement of the "twenty-minute" rule. *See Kikumura*, 242 F.3d at 963 (reversing a district court's denial of a preliminary injunction to a prisoner seeking relief under RFRA, noting that "'the denial of the plaintiff's right to the free exercise of his religious beliefs is a harm that cannot be adequately compensated monetarily.'") (Citing *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996). *Accord: Warsoldier*, 418 F.3d at 1001-02 (reversing a district court's denial of a preliminary injunction to a prisoner seeking relief under RLUIPA). Accordingly, Plaintiffs have satisfied the second prong of the test for a preliminary injunction.

The third and the fourth prongs of the preliminary injunction test also weigh in Plaintiffs' favor. Clearly, a preliminary injunction that does nothing more than order a public agency *to comply with its own policy* is unlikely to cause injury to that agency or to the public. Here, the only remedy Plaintiffs seek through this motion is enforcement of Warden's Memorandum # 7-2008. Defendants can hardly claim that such enforcement will cause them or the public to suffer some

injury, as the very promulgation of this policy indicates that they support its application.

Defendants are likely to claim that Plaintiffs' request for injunctive relief is moot because the "twenty-minute" rule was repealed and replaced it Warden's Memorandum # 7-2008. While it is true that the Warden's new rule, *if properly implemented*, should cure the defect in the old rule, it is also true that guards continue to enforce the "twenty-minute" rule. Having already suffered numerous violations of their rights, Plaintiffs should no longer remain at risk of additional injury. Accordingly, Plaintiffs' claim for injunctive relief is not moot, and Plaintiffs are entitled to the protection that only an injunction can provide. *See Skinner v. Uphoff*, 234 F. Supp.2d 1208, 1216 (D. Wyo. 2002) (holding that even though WDOC officials claimed to have implemented new rules, it remained unclear that these rules would be fully and immediately implemented, thus necessitating the issuance of injunctive relief). *Accord: Ginest v. Board of County Comm'rs of Carbon County, Wyoming*, 333 F. Supp.2d 1208-09 (D. Wyo. 2004).

Once federal violations have been shown, a request for injunctive relief must be granted unless "(1) it can be said with assurance that 'there is no reasonable expectation . . .' that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). The party alleging mootness has the burden of proof, and "the burden is a heavy one." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953). *See generally Skinner*, 234 F. Supp. at 1216. Here, given that guards *continued* to enforce the

21

"twenty-minute" rule weeks after that rule was repealed, Defendants are in no position to claim that Warden's Memorandum # 7-2008 "completely and irrevocably eradicated the effects of the alleged violation" and that no similar violations will or can happen again. *See County of Los Angeles*, 440 U.S. at 631; *Ginest*, 333 F. Supp.2d at 1208-09.

## CONCLUSION

The only baffling question in this entire case is this: Why did Warden Murphy and Deputy Director Steve Lindly staunchly defend in January 2008 a rule that so clearly violated RLUIPA, enacted in 2000? The answer to that question, however, is reserved for trial. At present, the only question before the Court is whether the Plaintiffs are entitled to a preliminary injunction to protect against further applications of Defendants' "twenty-minute" rule.

The answer to that question is obvious. Defendants' own documents demonstrate that prison guards--even weeks after Warden's Memorandum # 7-2008 was enacted--continued to enforce the "twenty-minute" rule against the Plaintiffs, causing Plaintiffs to suffer irreparable injury in violation of their rights under RLUIPA. Plaintiffs have suffered enough, and they are entitled to the protection of an injunction. Accordingly, Plaintiffs respectfully request that the Court issue preliminary injunctive relief, enjoining Defendants and all persons under their command from failing to apply Warden's Memorandum # 7-2008 instead of the Warden's "twenty-minute" rule.

22

Respectfully submitted this 29th day of May, 2008.

Stephen L. Pevar

Jennifer Horvath

## CERTIFICATE OF SERVICE

I hereby certify that an exact copy of the foregoing document was sent by U.S. mail, postage prepaid, to Christine Cox, Office of the Attorney General, 2424 Pioneer, 2d Floor, Cheyenne, WY 82002, on the 29th day of May, 2008.

Jennifer Horvath

23



# Wyoming State Penitentiary
## Office of the Warden

January 22, 2008

Joseph Miller #23387
Unit C-2

Re: Meal Timelines

Dear Mr. Miller,

Twice now you have written to me regarding the timelines for serving meals.  Unit Manager Ron Schmitz gave you a thorough reply to your answers, and did so on my behalf.

For years it has been the practice to allow WSP inmates twenty (20) minutes to eat their meals, longer on those special meal days such as Thanksgiving Day.  This is pretty much the standard at prisons across the country.  I do not know why this rule has suddenly become an issue for you.

The rule is also applied to those who eat their meals in the pod or cells.  In that food is not allowed to be taken out of the dining hall, neither are inmates in the units allowed to save back food.  Food that is saved back creates sanitary issues and sometimes security issues.

The rules apply to all, even those with special or religious diets.

Respectfully,

Michael J. Murphy
Warden
Wyoming State Penitentiary

Cc: E. J. Wilson, Deputy Warden
    Ron DeFauw, Unit Manager
    Ron Schmitz, Unit Manager
    Janell Thayer, Unit Manager
    Major John Jacobs
    All Lieutenants
    Jason Bohl, Grievance Manager

**EXHIBIT**

*1*



**STATE OF WYOMING**

**MEMORANDUM**

**TO:**   **Inmate Population**                                  **DATE:**   March 24, 2008

**FROM:**   Michael J. Murphy                              **SUBJECT:**   **In-Pod Meals**
                   Warden

**Re: Warden's Memorandum: #7-2008**

Effective immediately, all inmates who are fed in-pod are allowed up to thirty minutes to consume their meal.

An exception is made for those with special diets (including both medical and religious); inmates who are served special diets may keep possession of their meal and consume at any time prior to the serving of the next meal.  The previous meal should be disposed before the next meal is issued.

As always, it is against WDOC policy for any inmate to accept, give away, trade, barter or sell any food item provided by the Wyoming State Penitentiary.

Please feel free to contact my office if you have any questions.

FOR THE WYOMING DEPARTMENT OF CORRECTIONS
WYOMING STATE PENITENTIARY

Sincerely,


Michael J. Murphy
Warden

MJM/jlt
C:   Director Lampert                              Unit Managers
        Deputy Director Lindly                      Security Major
        Prison Division Administrator Keppler   Security Captains
        Deputy Prison Administrator Abbot        Security Lieutenants
        Investigation Unit                             Security Lieutenants
        Deputy Warden                                 Grievance Manager
        Housing Manager                              Department Supervisors

**EXHIBIT**

2



| | WYOMING DEPARTMENT OF CORRECTIONS | WDOC Form #320 | Page 1 of 1 |
|---|---|---|---|
| | | Inmate Communication Form | Last Revised: 02/14/07 |

### INMATE COMMUNICATION FORM

Inmate Name: Uluxie L. Pwadinen, Ja    WDOC # 22768 Unit/Cell: C-2-23C

To: OFC-Fuller    Subject: "Confiscation of my Halal meal"

### State your problem, question or request here:

This Morning I was Served Processed Turkey Bacon in my Islamic Religious Halal Meal this Morning while trying to fix this Problem because Pork, Processed Foods are Not Allowed in the Islamic Diet I had Some Food items that were Not tainted. I had Some Oatmeal, 2milks, 2 Juices and "You" Con Fiscated them Why!! You Knew it took me 45 minutes or more even longer to try to get a "New" Breakfast, then 11am Count was Called and "You" OFC. Fuller Knew I had Nothing to eat For Breakfast except the Oatmeal, 2 milks, 2 Juices that were on the table, You threw them AwaY !! WHy ! ! !

Inmate Signature Uluxie L. Pwadinen    Date: 04-05-08

### WDOC Response to Problem or Request:

I OFC. Fuller was cleaning the Juice, milk and food off the DAY room TABLES Because chow was about 1hr, and 15 min earlier and you HAVE 2min to eat it Was left behind You were know where By it.

☐ Request is Approved
☐ Request is Denied

WDOC Staff Signature: _____    Date: 4/5/08
Printed Name: OFC. Fuller

EXHIBIT 3



| WYOMING DEPARTMENT OF CORRECTIONS | WDOC Form #320 | Page 1 of 1 |
|---|---|---|
| | Inmate Communication Form | Last Revised: 02/14/07 |

### INMATE COMMUNICATION FORM

Inmate Name: Hurie L Purdiwon, Jr    WDOC # 22768    Unit/Cell: C-2-236

To: James Markum 'Caseworker Coord'    Subject: Confiscation of my Halal meal

#### State your problem, question or request here:

This Morning I was served Turkey Bacon which is a Processed Food, Not Allowed in the Islamic Diet, while trying to Solve this Problem OFC. Fuller Confiscated My Remaining Food items that were Not tainted. My Oatmeal, 2 milks, 2 Juices were taken by OFC. Fuller when I asked him Why did you take my Food I have not eaten At All OFC. Fuller said it was do to the 20-minute Rule that Why. What Should be done, what is Your Resolution!!

Inmate Signature Nurie L. Purdman jr    Date: 04-05-08

#### WDOC Response to Problem or Request:

I can't change the rule. Is it possible to skip the bacon and just eat the rest?

☐ Request is Approved
☐ Request is Denied

WDOC Staff Signature: James S. Markum    Date: 4-7-08
Printed Name: Jim Markum

EXHIBIT 4

WYOMING DEPARTMENT OF CORRECTIONS • 700 West 21ˢᵗ Street • Cheyenne, Wyoming 82002
TELEPHONE (307) 777-7208 • FAX (307) 777-7479 • WEBSITE http://doc.state.wy.us/corrections.asp

STEPHEN L. PEVAR
American Civil Liberties Union Foundation
32 Grand Street
Hartford, Connecticut 06106
(860) 293-1559

JENNIFER HORVATH
American Civil Liberties Union of Wyoming
PO Box 20706
1603 Capitol Avenue, Suite 510
Cheyenne, Wyoming 82003
(307) 637-4537

ATTORNEYS FOR PLAINTIFFS

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| JOSEPH MILLER,<br>and HURIE PURDIMAN, JR. ) | Civ. No. 08-CV-090B |
| )<br>Plaintiffs, ) | |
| )<br>vs. ) | DECLARATION OF |
| )<br> MICHAEL MURPHY and, )<br>ROBERT LAMPERT, in their official )<br>and individual capacities, ) | MICHAEL DAVID JONES |
| )<br>Defendants. )<br>_____ ) | |

**EXHIBIT**

5

I, Michael David Jones, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that:

1.  I am incarcerated at the Wyoming State Penitentiary in Rawlins, Wyoming.  I am 59 years old.  At all times material hereto I was, and still am, housed in the A-2 housing unit.

2.  I am a member of the Jewish faith, and I follow a Kosher diet due to my sincerely held religious beliefs.  For several years, I have received Kosher meals in A-2 that are delivered by staff.

3.  On April 17, 2008, I received a letter from Stephen L. Pevar of the ACLU, with whom I had been corresponding, in which was enclosed Warden's Memorandum # 7-2008.  The Memorandum is dated March 24, 2008, but I had not seen it before Mr. Pevar sent it to me.  It was not posted within the A-2 housing unit.  At no time had any staff member advised me, or to my knowledge advised any other A-2 prisoner, regarding the contents of this Memorandum.

4.  On April 24, 2008, at approximately 4:30 p.m., I received my Kosher meal bag from an officer.  I took the meal to my cell.  Subsequently, Corporal Paulsing opened my cell door and announced that he was going to be confiscating my Kosher meal bag. When I asked him for the reason, he stated that it was because of the "20-minute rule," and he noted that it had been more than 20 minutes since I had been issued my food. When I told him that the 20-minute rule had been changed and that a new memorandum had been issued, he said that he had not seen any such memorandum.

2

Dated this 21st day of May, 2008.

Michael David Jones # 14474

3

STEPHEN L. PEVAR
American Civil Liberties Union Foundation
32 Grand Street
Hartford, Connecticut 06106
(860) 293-1559

JENNIFER HORVATH
American Civil Liberties Union of Wyoming
PO Box 20706
1603 Capitol Avenue, Suite 510
Cheyenne, Wyoming 82003
(307) 637-4537

ATTORNEYS FOR PLAINTIFFS

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| JOSEPH MILLER,<br>and HURIE PURDIMAN, JR.<br><br>          Plaintiffs,<br><br>vs.<br><br>MICHAEL MURPHY and,<br>ROBERT LAMPERT, in their official<br>and individual capacities,<br><br>          Defendants. | Civ. No. 08-CV-090B<br><br>DECLARATION OF<br><br>HURIE PURDIMAN |

EXHIBIT

6

I, Hurie Purdiman, Jr., declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that:

1.  I am incarcerated at the Wyoming State Penitentiary in Rawlins, Wyoming.  I am 37 years old.  I am housed in Unit C, Pod 2.

2.  I have been a sincere adherent to and have practiced the Muslim faith since 1986.

3.  Two religious activities that I engage in are prayer and fasting.  I regularly pray five times each day, as do many other Muslims.  Muslim prayers take place at different times each day, dictated in part by the rising and setting of the sun.

4.  I observe the Muslim period of fasting during Ramadan each year, and other periods of fasting, as well.  On these occasions, I fast from sunup until sundown.

5.  C Unit is a "close custody" unit.  Meals are brought into the unit and are served from a common area.  Guards make an announcement when the meals are ready, and they then open cell doors one at a time so we can exit our cells to access our meals.

6.  Occasionally, my prayers and fasting conflict with meal times.  On those occasions, if I am praying when a guard comes to open my door for a meal, I must discontinue my prayer and exit immediately or else forgo my meal, because many guards refuse to come to the cells more than once to open the door during mealtime.

7.  My faith requires that I not eat certain foods, including pork and certain processed foods.  I have therefore requested that the prison offer me a special diet,

2

known as a Halal diet.  My Halal meals are served in a sealed bag, although they are served at the same time as other meals are served in C Unit.

8.  On December 23, 2007, I explained to Correctional Officers Dauwen and Zimmershield that I had been fasting from December 11, 2007 and would continue to fast until January 10, 2008, from sunup until sundown.   I was fasting during the month of Zul-Hijjah, or the pilgrimage, because Muslims may fast when they are unable to make the pilgrimage.

9.  On December 23, 2007, Officer Lynch brought my meal to my cell at 7:45 pm, after I had prayed.  The food had just been heated, so I was waiting for it cool down. Officers Dauwen and Zimmershield came to my cell and said that I "had better change [my] religion fast" because I only had a few minutes to eat due to a "new rule."  They then ordered me to leave my cell so that they could search it.  When I was permitted to return to my cell at 8:00 p.m., I discovered that they had confiscated my meal.

10.  On December 31, 2007, I was fasting when the dinner meal was served at approximately 4:00 pm.  An officer delivered my Halal meal bag to my cell.  I put it aside so I could continue my fast until sundown, as required by my faith, after which I planned to break my fast and eat.  However, after twenty minutes, Correctional Officer Lynch came to my cell to confiscate my meal.  He told me that I have to eat when everyone else does, and I only have twenty minutes.

11.  It is my understanding that Officer Lynch confiscated my meal as a result of an unwritten rule at the prison that requires prisoners to consume their meals within

3

twenty minutes.  Although I was later told that this "20-minute" rule had been in effect at the prison for many years, guards only began enforcing it in C Unit in December 2007.  I had not heard of this rule before December 23, nor had it ever been enforced against me prior to December 2007.

12.  The prison's "20-minute" rule requires me to violate my religious beliefs on those occasions when the meal is served while I am praying or fasting.  In those instances, I am forced to choose between forgoing my meal and completing my religious activity.

13.  I grieved the December 31, 2007 confiscation of my meal through the prison's administrative grievance process.  On April 7, 2008, I received a letter from WDOC Director Robert Lampert dated April 1, 2008, in response to my grievance appeal.  Mr. Lampert's letter indicated that Warden Murphy had issued Warden's Memorandum # 7-2008 on March 24, 2008, and that this would resolve my concerns. However, Mr. Lampert did not attach a copy of the Memorandum to his response, no one had told me about the Memorandum prior to this time, nor was the Memorandum posted in my Pod.  The first time I saw Memorandum # 7-2008 was when I received a copy from Stephen Pevar on April 17, 2008.  At that time, I learned that it indicated that prisoners with special meals should be permitted to keep their meal bags until the next meal is delivered. On May 1, I received a copy of Warden's Memorandum # 7-2008 from Jason Bohl. This is the first time WSP staff showed me a copy of the Memorandum.

4

14. On April 5, 2008, I was served a meal bag that contained a number of items, including a hot portion. The prison is aware that for religious reasons, I cannot eat processed turkey bacon. Yet the hot portion of my meal contained processed turkey bacon. I spoke with Sergeant Borah, and showed him my meal. He agreed to call the kitchen to see if the hot portion could be replaced, which I appreciated. While I was waiting for a response from the kitchen, a "count" was called, during which time all prisoners must be locked in their cells to be counted. I left all my food on the table in the center of the Pod during count and intended on eating the untainted portions as soon as count ended. At the end of count, I found that Officer Fuller had confiscated the entire meal and thrown it in the garbage.

15. On April 5, 2008, in compliance with the prison's grievance process, I sent an Inmate Communication Form # 320 to Officer Fuller regarding his confiscation of my meal on that date. Officer Fuller responded that he discarded my meal because I only have 20 minutes to eat it. A copy of his response is attached.

16. On April 5, I also submitted an Inmate Communication Form to my Caseworker, James Markum, complaining about the "20-minute" rule. Mr. Markum responded on April 7 that he "can't change" the 20-minute rule. A copy of his response is attached.

17. On April 24, I filed a grievance regarding Officer Fuller's confiscation of my food on April 5. After I received a response from Jason Bohl, I filed a grievance appeal to the Warden on May 2, 2008. Warden Murphy responded on May 5, acknowledging

5

that "Officer Fuller probably should not have thrown away [my] meal," but he then added, "I find that Officer was acting in good faith [sic] that he was following policy and procedure, though it had recently changed." A copy of Warden Murphy's response is attached.

18.    On May 8, our meals were delivered to our Pod at 4:45 pm. While some prisoners were still waiting to get their meals, Corporal Fleming announced gym time. I asked Officer York if I could put my Halal meal in my cell while I went to the gym. He said if I returned to my cell, which would prevent me from going to the gym, I would be locked down.  Therefore, I left my meal on the table, as did at least seven other prisoners, and we all went to the gym.   When we returned to the Pod at about 6:45 pm, I found that my whole meal was gone, except a piece of bread, but everyone else's meals were still there.  Other prisoners who had remained in the pod during gym time told me that Officer York had discarded my meal. On May 9, I tried to talk to Officer York about the confiscation of my meal, but he refused to talk about it.  I then asked Sergeant Barber about this, and he said "Officer York was only doing what the Warden said."

Dated this 21ˢᵗ day of May, 2008.

Hurie L. Purdiman
Hurie Purdiman # 22766

6



| WYOMING DEPARTMENT OF CORRECTIONS | WDOC Form #320 | Page 1 of 1 |
|---|---|---|
| | Inmate Communication Form | Last Revised: 02/14/07 |

## INMATE COMMUNICATION FORM

Inmate Name: Bluxie L Pureldiman, Ja   WDOC # 22768   Unit/Cell: C-2-230

To: OFC-Fuller   Subject: "Confiscation of my Halal meal"

### State your problem, question or request here:

This Morning I was served Processed Turkey Bacon in my Islamic Religious Halal Meal this morning while trying to fix this Problem because Pork, Processed Foods are Not Allowed in the Islamic Diet I had Some Food items that were Not tainted. I had Some Oatmeal, 2 milks, 2 Juices and "You" Confiscated them why!! You knew it took me 45 minutes or more even longer to try to get a "New" Breakfast, then 11am Count was Called and "You" OFC-Fuller Knew I had Nothing to eat For Breakfast except the Oatmeal, 2 milks, 2 Juices that were on the table, You threw them Away!! Why!!!

Inmate Signature Huxie L. Pureldiman   Date: 04-05-08

### WDOC Response to Problem or Request:

I OFC. Fuller was Clearing the Juice, milk and Food of the Day room Tables Because Chow was about 1hr. and 15 min earlier and you Have 20min to eat it Was left behind you were know where By iT.

☐ Request is Approved
☐ Request is Denied

WDOC Staff Signature: OFC S. all   Date: 4/5/08
Printed Name: OFC. Fuller

WYOMING DEPARTMENT OF CORRECTIONS • 700 West 21ˢᵗ Street • Cheyenne, Wyoming 82002
TELEPHONE (307) 777-7208 • FAX (307) 777-7479 • WEBSITE http://doc.state.wy.us/corrections.asp



| WYOMING DEPARTMENT OF CORRECTIONS | WDOC Form #320 | Page 1 of 1 |
|---|---|---|
| | Inmate Communication Form | Last Revised: 02/14/07 |

### INMATE COMMUNICATION FORM

Inmate Name: Huric L. Purdimon, Jr   WDOC # 22768   Unit/Cell: C-2-236

To: James Markum "Correctional Cont"   Subject: Confiscation of My Halal meal

#### State your problem, question or request here:

This Morning I was served Turkey Bacon which is a Processed Food, Not Allowed in the Islamic Diet, While trying to Solve this Problem ofC. Fuller Confiscated my Remaining Food items that were Not tainted. My Oatmeal, 2milks, 2 Juices were token by OFC. Fuller When I asked him Why did You take my Food I have not eaten At All OFC. Fuller said it was do to the 20-minute Rule that Why. What should be done, what is Your Resolution !!

Inmate Signature  Nurie L. Purdimon        Date: 04-05-08

#### WDOC Response to Problem or Request:

I can't change the rule. Is it possible to skip the bacon and just eat the rest?

☐ Request is Approved
☐ Request is Denied

WDOC Staff Signature: James E. Markum    Date: 4-7-08
Printed Name:  Jim Markum



# Wyoming State Penitentiary
## Office of the Warden
## Grievance Appeal Reply

May 5, 2008

Hurie Purdiman #22768
Unit C-2

Re:  Grievance #443

Dear Mr. Purdiman,

<u>Summary:</u> You state that during count you left your meal on the table in the dayroom during count. For reasons known only to you, when count was called you did not take your meal with you to your cell. During his rounds the officer found the food on the table and disposed it. You state that your requested remedy is "for this administration to stop enforcing rules, change policy-procedures that violate Muslim inmates' Constitutional, civil rights." You then change the subject to complain that you are not receiving a "strict halal meal."

<u>Warden's Response:</u> Officer Fuller probably should not have thrown away your meal, but neither should you have left it on the table during count. I find that Officer was acting in good faith that he was following policy and procedure, though it had recently changed. Employees have been made aware of warden's memorandum #07-2008 which allows inmates who receive religious meals in the pod to retain those menu items up until the following meal.

<u>Conclusion:</u> I have changed rules in order to accommodate the different faiths and diets. This institution has worked very hard to meet your religious and dietary requirements. I am denying your appeal.

You may appeal my decision to the Director of the Wyoming Department of Corrections utilizing form #322 within ten (10) days of the receipt of this response.

Respectfully,

Michael J. Murphy
Warden
Wyoming State Penitentiary

Cc: Central Office
    Grievance Manager

STEPHEN L. PEVAR
American Civil Liberties Union Foundation
32 Grand Street
Hartford, Connecticut 06106
(860) 293-1559

JENNIFER HORVATH
American Civil Liberties Union of Wyoming
PO Box 20706
1603 Capitol Avenue, Suite 510
Cheyenne, Wyoming 82003
(307) 637-4537

ATTORNEYS FOR PLAINTIFFS

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| JOSEPH MILLER, and HURIE PURDIMAN, JR. | ) ) ) | Civ. No. 08-CV-090B |
| Plaintiffs, | ) ) | |
| vs. | ) ) | DECLARATION OF |
| MICHAEL MURPHY and, ROBERT LAMPERT, in their official and individual capacities, | ) ) ) ) | JOSEPH MILLER |
| Defendants. | ) ) | |

EXHIBIT

7

I, Joseph Miller, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that:

1.   I am incarcerated at the Wyoming State Penitentiary in Rawlins, Wyoming.  I am 32 years old.  I was housed in B Unit, Pod 2 until January 1, 2008 when I was transferred to Unit C, Pod 2.

2.   I have been a sincere adherent to and have practiced the Muslim faith for at least 15 years.

3.   Two religious activities that I engage in are prayer and fasting.  I regularly pray five times each day, as do many other Muslims.  Muslim prayers take place at different times each day, dictated in part by the rising and setting of the sun.

4.   I observe the Muslim period of fasting during Ramadan each year, and other periods of fasting, as well.  On these occasions, I fast from sunup until sundown.

5.   C Unit is a "close custody" unit.  I was moved to C Unit on January 1, 2008.  Since I was moved, meals have been brought into the unit and are served from a common area.  Guards make an announcement when the meals are ready, and they then open cell doors one at a time so we can exit our cells to access our meals.  Occasionally the guards will deliver the meals directly to our cells.

6.   Occasionally, my prayers and fasting conflict with meal times.  On those occasions, if I am praying when a guard comes to open my door for a meal, I must discontinue my prayer and exit immediately or else forgo my meal, because many guards refuse to come to the cells more than once to open the door during mealtime.

2

7.  My faith requires that I not eat certain foods, including pork.  I have therefore requested that the prison offer me a special diet, known as a Halal diet.  My Halal meals are served in a sealed bag, although they are served at the same time as other meals are served in C Unit.

8.  On December 23, 2007, an officer confiscated my meal before I had eaten it.  When I asked why, the officer said that an email had been issued stating that prisoners who receive special religious meals have only 20 minutes to eat.  I had never heard of this rule before, and there was no such rule posted in my housing unit.

9.  After December 23, 2007, the "twenty-minute" rule was enforced against me on other occasions.  I complained about it to Unit Manager Ron Schmitz.  In early January, Mr. Schmitz told me that he couldn't do anything about the rule, that it was not just me, but that the "twenty-minute" rule applied to all prisoners who receive Kosher/Halal meals.  I then complained about it to Warden Murphy.  In a letter dated January 22, 2008, Warden Murphy told me that, "For years it has been the practice to allow WSP inmates twenty (20) minutes to eat their meals . . ."  A copy of his response is attached.

10.  On January 1, 2008, I sent a letter to Steve Lindly, the Deputy Director of WDOC, regarding the confiscation of my meals due to the "twenty-minute" rule.  On January 29, 2008, Mr. Lindly acknowledged in his response that, "Warden Murphy has advised the staff to enforce the standard of 20 minutes to eat a meal."  A copy of his response is attached.

3

11.  On April 5, 2008, I was served a meal bag that contained a number of items, including a hot portion.  The prison is aware that for religious reasons, I cannot eat pork.  Yet the hot portion of my meal contained pork.  When I showed this to Officer Fuller and asked if he could help me get a new portion, he said something like: "That's your problem, and you'll have to deal with it or go without."  I then spoke with Sergeant Borah, and showed him my meal.  He agreed to call the kitchen to see if the hot portion could be replaced, which I appreciated. While I was waiting for a response from the kitchen, a "count" was called, during which time all prisoners must be locked in their cells to be counted.  I left all my food on the table in the center of the Pod during count, and intended on eating the untainted portions as soon as count ended.  At the end of count, I found that Officer Fuller had confiscated the entire meal and thrown it in the garbage.

12.  The prison's "20-minute" rule requires me to violate my religious beliefs on those occasions when the meal is served while I am praying or fasting.  In those instances, I am forced to choose between forgoing my meal and completing my religious activity.

Dated this 21st day of May, 2008.

Joseph Miller # 23387

4



# Wyoming State Penitentiary
## Office of the Warden

January 22, 2008

Joseph Miller #23387
Unit C-2

Re: Meal Timelines

Dear Mr. Miller,

Twice now you have written to me regarding the timelines for serving meals. Unit Manager Ron Schmitz gave you a thorough reply to your answers, and did so on my behalf.

For years it has been the practice to allow WSP inmates twenty (20) minutes to eat their meals, longer on those special meal days such as Thanksgiving Day. This is pretty much the standard at prisons across the country. I do not know why this rule has suddenly become an issue for you.

The rule is also applied to those who eat their meals in the pod or cells. In that food is not allowed to be taken out of the dining hall, neither are inmates in the units allowed to save back food. Food that is saved back creates sanitary issues and sometimes security issues.

The rules apply to all, even those with special or religious diets.

Respectfully,

Michael J. Murphy
Warden
Wyoming State Penitentiary

Cc: E. J. Wilson, Deputy Warden
 Ron DeFauw, Unit Manager
 Ron Schmitz, Unit Manager
 Janell Thayer, Unit Manager
 Major John Jacobs
 All Lieutenants
 Jason Bohl, Grievance Manager



THE STATE OF WYOMING

# Department of Corrections

700 West 21st Street
Cheyenne, Wyoming 82002
Telephone: (307) 777-7208
Fax: 307-777-7479

Dave Freudenthal
Governor

Robert O. Lampert
Director

January 29, 2008

Mr. Joseph S. Miller #23387
P.O. Box 400
Rawlins, WY 82301

Dear Mr. Miller:

Thank you for your letter dated January 1, 2008, related to a 20 minute time limit to eat your meals, as well as other issues related to a lack of showers and flag time while on PDS, along with missing property.   I had hoped to respond sooner.

You may know the answer to your question about the 20 minutes to eat your meals by the time you receive my letter. · It is my understanding the matter was initially raised as to why all inmates were not kept to the same amount of time to eat a meal, which is 20 minutes.  For example, inmates receiving non-religious diet trays must return them within 20 minutes.  It should not be applied in a bias way and, in fact, seems to make the matter of eating meals and the time allowed more equal, rather than less equal.

Warden Murphy has advised the staff to enforce the standard of 20 minutes to eat a meal.  It would seem if you are expected to warm your meals and the unit microwave is not working, some exception would have to be made for that situation.  I am uncertain if the Warden has put out a memo to the inmates advising them of the meal time frame.

I will ask Warden Murphy for his input relative your issues while in PDS, including the missing property.

We need to enforce rules and policies in a consistent manner and it appears that is what Warden Murphy is attempting to do around the meal issue.  Hopefully I have addressed your question on the meal issue.

Sincerely,

Steve Lindly
Deputy Director

xc:  Warden Murphy



**STATE OF WYOMING**

**MEMORANDUM**

TO: Hurie Purdiman #22768                    DATE: 01/16/2008

FROM: Jason Bohl                             SUBJECT: Grievance 21*
Grievance Manager

**Summary:** You contend that on 12/31/2007, you claim that Officer Dauwen came into your cell and took a letter from the warden that was in your possession for the purpose of making a copy. Initially, said officer did not return this letter to your cell however after speaking with Sergeant Romero, the letter was then returned to you. In addition to this incident, Officer Lynch confiscated your Halal meal bag shortly after it was prepared in the microwave for you. You feel that the officers are harassing you based on your religious preference and skin color and have requested that any similar behavior no longer occur in the future.

**Investigation:** Information from assigned staff member.

**Conclusion:** At present time, a memorandum does not exist indicating that religious diets be confiscated after a specific period of time however the warden has agreed with this practice to ensure that inmates receiving these diets are not hoarding food or maintaining possession of the plastic bag it is delivered in which may be used in the process of fermentation. As such, this writer finds that Officer Lynch was without fault in requesting your Halal meal bag on said date.

In reference to the letter you claim Officer Dauwen removed from your cell, this writer was informed by Lt. Kevin Edwards, who spoke with Officer Dauwen, that you willingly gave the letter to said officer through the cuff port after he asked to view it. The officer made a copy of the letter at which time it was returned to you. There is no substantiation to your claims that this action or those of Officer Lynch were representative of harassment. As stated in a previous response by this writer, you may want to reevaluate what issues truly merit the grievance process as some can be resolved simply by speaking with the staff member involved. Obviously you have raised several issues involving your religious beliefs or tenets being violated and in several of these cases this writer genuinely feels that it was a misunderstanding or miscommunication between yourself and staff.

Additionally, you failed in this grievance and many previous grievances to make an attempt to resolve these issues using the communication continuum. As such, this writer will no longer accept grievances unless you have made an attempt to resolve at the lowest level possible. Several issues you have grieved recently were reasonable concerns and this writer has continued to allow them through in an effort to help resolve them however this writer will no longer be so generous. Please follow all steps of the grievance policy before you turn in a grievance form.

**EXHIBIT**

**8**



# STATE OF WYOMING

## MEMORANDUM

The Grievance Manager finds grievance 21* resolved. You may appeal my decision by submitting a form 322 within seven days to the Warden.

**FOR THE DEPARTMENT OF CORRECTIONS**
**WYOMING STATE PENITENTIARY**

*Q. Bohl*

**Jason Bohl**
**Grievance Manager**

Cc: grievance files
Central Office



Office of the:   **INSTITUTIONAL**
**ACTIVITIES**
**COORDINATOR**

January 28, 2008

SUBJECT:   Inmate Grievance Form #321.
Received January 22, 2008

Mr. Peitsmeyer #23598

I am in receipt of your grievance form #321.

**Inmate Statement:**
My ability to participate in religious observances has been significantly circumscribed by some prison functionaries. The stifling and radical 20 minute restrictions to have the kosher bag back to the officer prevents the Jewish observance of self-preparations of vegetables and fruits, heating the meals, preparing the boiled eggs and praying, etc......

**Response:**
It does state in the Judaism religion that there are general rules for preparing, cleansing, and consumption of the kosher meal.

It does state in the Judaism religion that Shabbath (Shabbat) is the most important ritual observance in Judaism. It is the only ritual observance instituted in the Ten Commandments. It is also the most important special day. Shabbat is primarily a day of rest and spiritual enrichment. The word "Shabbat" comes from the root Shin-Beit-Tav, meaning to cease, to end, or to rest.

**A Typical Shabbat** (day of rest).
Shabbat, like all Jewish days, begins at sunset (Friday), because in the story of creation in Genesis Ch. 1, you will notice that it says, "And there was evening, and there was morning, one day." From this, we infer that a day begins with evening, that is, sunset.

**Conclusion:**

It is reasonable to say that each person has a right to practice a religion and a belief of their own and to follow in the ways of the religion(s) faith and beliefs as scripted by time, but *regardless an inmate's chosen religious beliefs*, an unfortunate consequences of his incarceration that one may be required to consume their meal in a manner which may not be to their religious preference.

**EXHIBIT**

9

The 20 minutes is reasonable for consumption and for which the time frames are allotted by the institution.


Cordially,


Sgt. Denise Neu
Facilitating chapel duties for
Wyoming State Penitentiary



THE STATE OF WYOMING

# Department of Corrections

700 West 21st Street
Cheyenne, Wyoming 82002
Telephone: (307) 777-7208
Fax: 307-777-7479

Dave Freudenthal
Governor

Robert O. Lampert
Director

January 29, 2008

Mr. Joseph S. Miller #23387
P.O. Box 400
Rawlins, WY  82301

Dear Mr. Miller:

Thank you for your letter dated January 1, 2008, related to a 20 minute time limit to eat your meals, as well as other issues related to a lack of showers and flag time while on PDS, along with missing property.  I had hoped to respond sooner.

You may know the answer to your question about the 20 minutes to eat your meals by the time you receive my letter. It is my understanding the matter was initially raised as to why all inmates were not kept to the same amount of time to eat a meal, which is 20 minutes.  For example, inmates receiving non-religious diet trays must return them within 20 minutes.  It should not be applied in a bias way and, in fact, seems to make the matter of eating meals and the time allowed more equal, rather than less equal.

Warden Murphy has advised the staff to enforce the standard of 20 minutes to eat a meal.  It would seem if you are expected to warm your meals and the unit microwave is not working, some exception would have to be made for that situation.  I am uncertain if the Warden has put out a memo to the inmates advising them of the meal time frame.

I will ask Warden Murphy for his input relative your issues while in PDS, including the missing property.

We need to enforce rules and policies in a consistent manner and it appears that is what Warden Murphy is attempting to do around the meal issue.  Hopefully I have addressed your question on the meal issue.

Sincerely,

Steve Lindly
Deputy Director

xc:  Warden Murphy

**EXHIBIT**

_10_



THE STATE OF WYOMING

# Department of Corrections

700 West 21ˢᵗ Street
Cheyenne, Wyoming 82002
Telephone: (307) 777-7208
Fax: 307-777-7479

Dave Freudenthal
Governor

Robert O. Lampert
Director

April 1, 2008

Mr. Hurie L. Purdiman Jr. #22768
P.O. Box 400
Rawlins, WY 82301

Re: Grievance appeal

Dear Mr. Purdiman:

This is in reply to your grievance appeal #21 to the Director's office. The Warden's reply, dated February 22, 2008, addressed the matter of your dissatisfaction with Grievance Manager Jason Bohl. Though there are several issues in your grievance, and grievances are to pertain to one issue at a time, since the majority of the issues you raise relate to the matter of religious meals I will address the broader issues.

On March 13, 2008, Deputy Director Steve Lindly met with you at WSP to discuss the issues you raised in this grievance. You re-stated the issues, as you saw them, to him and he reported your conversation went well.

Let me begin by addressing the matter of the competence and judgment of Grievance Manager Jason Bohl. I do not find anything compelling to indicate Mr. Bohl is in the wrong job. It has been my experience that Mr. Bohl is quite qualified to serve in his current capacity. Additionally, part of the appeal process is to allow multiple reviews of the grievance process, which allows matters and issues to be re-examined.

The general issue of your grievance revolves around your religious meal and how it can be kept in the cell. The second related issue pertained to when an officer inquired about your religious meal; you showed him a letter from the Warden pertaining to that issue. You acknowledge that you showed him the letter, but when he took it and left your cell, you said you did not give him permission to take the "personal mail." The officer was apparently copying the letter (the matter of keeping religious meals in cells had been an issue). He later returned your letter. As this was a letter from the Warden, it was not legal mail, and not "personal mail" in the sense that phrase might be used outside of prison. The fact the officer wanted a copy does not constitute a violation of any policy or law. Your expectation to privacy with mail, such as that sent from the Warden, is not the same as someone outside of prison might expect.



**EXHIBIT**

11

The third issue you raise pertained to your religious meal being taken before you could eat it, as you were involved in a religious fast for a two week period and you were waiting to eat your meal later in the day. This matter looks to be resolved with the issuance of Warden's memorandum #7-2008, dated March 24, 2008. That would appear to resolve this final issue.

In summary, I deny the first two issues raised, and the third issue appears to be resolved.

Sincerely,

R.O. Lampert
Director

xc:    Warden Murphy
       Mr. Jason Bohl, Grievance Manager
       file

2

STEPHEN L. PEVAR
American Civil Liberties Union Foundation
32 Grand Street
Hartford, Connecticut 06106
(860) 293-1559

JENNIFER HORVATH
American Civil Liberties Union of Wyoming
PO Box 20706
1603 Capitol Avenue, Suite 510
Cheyenne, Wyoming 82003
(307) 637-4537

ATTORNEYS FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| JOSEPH MILLER, <br> and HURIE PURDIMAN, JR. ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> MICHAEL MURPHY and, ) <br> ROBERT LAMPERT, in their official ) <br> and individual capacities, ) <br> ) <br> Defendants. ) <br> ————————————————) | Civ. No. 08-CV-090B <br><br> DECLARATION OF <br><br> DAN GOODRICK |

**EXHIBIT**

12



**STATE OF WYOMING**

**MEMORANDUM**

**TO:**   **Inmate Population**                         **DATE:**   March 24, 2008

**FROM:**   Michael J. Murphy                         **SUBJECT:**   **In-Pod Meals**
                 Warden

**Re: Warden's Memorandum: #7-2008**

Effective immediately, all inmates who are fed in-pod are allowed up to thirty minutes to consume their meal.

An exception is made for those with special diets (including both medical and religious); inmates who are served special diets may keep possession of their meal and consume at any time prior to the serving of the next meal. The previous meal should be disposed before the next meal is issued.

As always, it is against WDOC policy for any inmate to accept, give away, trade, barter or sell any food item provided by the Wyoming State Penitentiary.

Please feel free to contact my office if you have any questions.

FOR THE WYOMING DEPARTMENT OF CORRECTIONS
WYOMING STATE PENITENTIARY

Sincerely,


Michael J. Murphy
Warden

MJM/jlt
C:   Director Lampert                         Unit Managers
       Deputy Director Lindly                   Security Major
       Prison Division Administrator Keppler     Security Captains
       Deputy Prison Administrator Abbot         Security Lieutenants
       Investigation Unit                       Security Lieutenants
       Deputy Warden                            Grievance Manager
       Housing Manager                          Department Supervisors



# Wyoming State Penitentiary
### Office of the Warden
### Grievance Appeal Reply

May 5, 2008

Hurie Purdiman #22768
Unit C-2

Re:  Grievance #443

Dear Mr. Purdiman,

<u>Summary:</u> You state that during count you left your meal on the table in the dayroom during count.  For reasons known only to you, when count was called you did not take your meal with you to your cell.  During his rounds the officer found the food on the table and disposed it.  You state that your requested remedy is "for this administration to stop enforcing rules, change policy-procedures that violate Muslim inmates' Constitutional, civil rights."  You then change the subject to complain that you are not receiving a "strict halal meal."

<u>Warden's Response:</u> Officer Fuller probably should not have thrown away your meal, but neither should you have left it on the table during count.  I find that Officer was acting in good faith that he was following policy and procedure, though it had recently changed.  Employees have been made aware of warden's memorandum #07-2008 which allows inmates who receive religious meals in the pod to retain those menu items up until the following meal.

<u>Conclusion:</u> I have changed rules in order to accommodate the different faiths and diets.  This institution has worked very hard to meet your religious and dietary requirements.  I am denying your appeal.

You may appeal my decision to the Director of the Wyoming Department of Corrections utilizing form #322 within ten (10) days of the receipt of this response.

Respectfully,

Michael I. Murphy
Warden
Wyoming State Penitentiary

Cc: Central Office
    Grievance Manager

EXHIBIT
13